IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARK L. OYAMA, | ) CIVIL NO. 12-00137 HG-BMK |
| | ) |
| Plaintiff, | ) MEMORANDUM IN SUPPORT |
| | ) |
| vs. | ) |
| | ) |
| UNIVERSITY OF HAWAII; ET AL., | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM IN SUPPORT

I.  INTRODUCTION

The undisputed material facts establish Defendants violated Plaintiff Mark L. Oyama's (hereinafter "Mr. Oyama") rights to free speech and due process as a matter of law.

II.  BACKGROUND

In 2011 Mr. Oyama was a graduate student in the Secondary Teaching Education Program at the College of Education at University of Hawaii at Manoa.[1]  Plaintiff's Concise Statement of Material Facts (hereinafter "CSOF") No. 1.  Mr. Oyama was very successful in his coursework, but expressed

---

[1] Mr. Oyama has an undergraduate degree in mathematics from the California Institute of Technology and a masters' degree in physics from the University of Hawaii.  CSOF No. 2.

controversial views for the purposes of debate and discussion during some courses. CSOF No. 3.

Due to those views Defendant Jeffrey Moniz (Director of the Secondary Teaching Education Program) decided to deny Mr. Oyama a student teacher placement in the summer of 2011.  CSOF No. 4.  A student teaching placement is necessary to obtain a certificate from the Secondary Teaching Education Program.  CSOF No. 5.  Defendant Moniz let Defendant Sorensen know some members of the faculty purportedly had concerns over placing Mr. Oyama as a student teacher even though he had completed his required coursework with no academic deficiencies.  CSOF No. 6

Defendant Moniz first purportedly heard of faculty concerns regarding Mr. Oyama from an instructor in the Summer of 2010.  CSOF No. 7.  Defendant Sorensen did not know if anyone had spoken to that faculty member since those concerns had arisen or had inquired whether that faculty member believed Mr. Oyama would be suitable to student teach.  CSOF No. 8.  Defendants did not consult another faculty member who purportedly had concerns about Mr. Oyama as to whether Mr. Oyama was suitable to be a student teacher.  CSOF No. 9.

Defendant Moniz drafted a letter dated June 2, 2011, which stated his decision to deny Mr. Oyama a student teaching placement due to "serious" concerns about Mr. Oyama's suitability for the profession.  CSOF No. 10.  This

draft letter strongly recommended that Mr. Oyama withdraw from the Secondary Teaching Education Program.  CSOF No. 10.  On June 7, 2011, Defendant Christine Sorensen's assistant cautioned Defendant Moniz against just saying that the faculty had agreed Mr. Oyama was not a good fit.  COSF No. 11.  Defendant Sorensen's assistant advised Defendant Moniz of the need to find a policy to give the faculty "latitude" and advised Defendant Moniz that Defendant Sorensen would like her assistant to work with Defendant Moniz to "strengthen" the draft letter.  CSOF No. 12.  On June 9, 2011, Defendant Sorensen's assistant circulated a revised draft which she claimed avoided "going into" Mr. Oyama's "rights to express his opinions".  CSOF No. 13.

On June 16, 2011, an instructor named Jason Siegel sent Defendant Moniz an email asserting that Mr. Oyama's comments in class had gone "from bad to worse," that Mr. Oyama would have a negative impact on children, and that Mr. Siegel had additional information.  CSOF No. 14.  Defendant Moniz expressed a need for the additional information "to strengthen our case" and requested anything which could evidence Mr. Oyama lacking an acceptable disposition for teaching.  CSOF No. 15.  On June 21, 2011, Mr. Siegel forwarded Defendant Moniz his correspondence with Mr. Oyama in which they had different opinions concerning mainstreaming special education students into secondary math classes.  CSOF No. 16.  Mr. Oyama concluded the correspondence by characterizing their differing

3

opinions as formal or theoretical and affirmed that this would not be a problematic issue for him in practice.  CSOF No. 16.

On June 29, 2011, Mr. Siegel forwarded Defendant Moniz another exchange he had with Mr. Oyama which Mr. Siegel mischaracterized as Mr. Oyama advocating corporal punishment.  CSOF No. 17.  On July 7, 2011, Defendant Moniz alerted University of Hawaii security that he had a meeting scheduled with Mr. Oyama the next day and that Mr. Oyama had purportedly previously made a reference to arming himself.  CSOF No. 18.  Mr. Oyama did not engage in any threatening behavior or conduct indicating a propensity for violence during his enrollment at the School of Education.   COSF No. 19.

On July 8, 2011, Defendant Moniz provided Mr. Oyama with a letter denying Mr. Oyama's application for student teaching placement because Mr. Oyama had purportedly expressed views of students with disabilities and sexual relationships between adults and minors which were not aligned with certain standards.  CSOF No. 20.  In a letter dated July 18, 2011, Mr. Oyama objected to the denial of his student teaching placement due to his intellectual views.  CSOF No. 21.  Mr. Oyama pointed out that he was receiving very late notice of concerns about his suitability and that he had met all of the student teaching requirements in the Secondary Teaching Education Program Handbook.  CSOF No. 21.  Mr.

4

Oyama requested alternate arrangements for his student teacher placement or a refund of his tuition. CSOF No. 21.

On July 29, 2011, Defendant Moniz affirmed the previous decision on behalf of the College of Education and denied Mr. Oyama a tuition refund. CSOF No. 22.

On August 16 and 17, 2011, Defendant Sorensen's assistant corresponded with a University of Hawaii administrator named Krystyna S. Aune regarding a query from Mr. Oyama as to why he had been constructively discharged from the Secondary Teaching Education Program. CSOF No. 23. Defendant Sorensen's assistant asserted that Defendant Moniz denied Mr. Oyama a student teaching placement based on faculty concerns stemming from Mr. Oyama's statements "primarily" relating to sexual relationships between minors and adults and students with disabilities. CSOF No. 23. Defendant Sorensen's assistant also claimed that Mr. Oyama had referred to bringing weapons to school. CSOF No. 23.

On August 17, 2011, Ms. Aune questioned whether the College of Education had internal procedures to follow in denying Mr. Oyama's application for student teaching placement, whether any such procedures were followed, and whether Defendant Moniz was authorized to speak for the College of Education. CSOF No. 24. Defendant Sorensen responded that Defendant Moniz spoke for the

Secondary Teaching Education Program not the College of Education, that she was assured applicable policies were followed, that she was uncertain there was a "firm" policy for the situation, and that she would purportedly not put young children in "harm's way" by placing a student teacher who had expressed an opinion that sexual relationships with minors were appropriate. CSOF No. 24.

Mr. Oyama appealed the decision to the STARFAC Committee but was not afforded a hearing where he had an opportunity to appear and state his case. CSOF No. 25. The policies regarding the STARFAC Committee do not expressly allow it to review an adverse action. CSOF No. 26. On December 15, 2011, Defendant Sorensen sent Mr. Oyama a letter on behalf of the STARFAC Committee which affirmed the denial of student teaching placement, admitted that internal policies and procedures had not been followed because Mr. Oyama was not timely informed of concerns about his suitability, and offered him $2,500. CSOF No. 27.

Mr. Oyama filed suit herein on March 9, 2012, alleging that Defendants' effective expulsion of him from the Secondary Teaching Education Program based upon his speech and views violated his rights to free speech and due process.

Mr. Oyama took Defendant Sorensen's deposition during which she revealed that she is extraordinarily unclear as to why Mr. Oyama was denied the

student teaching placement. Defendant Sorensen could not identify a particular concern which justified denying Mr. Oyama's student teaching placement, claiming that the decision was made by looking at the "whole" and that Mr. Oyama had expressed opinions not aligned with "existing standards". CSOF No. 28. Defendant Sorensen asserted that Mr. Oyama was not denied the student teaching placement based just on his opinions, but due to the "bigger picture" of his purported lack of self-reflection and awareness of others which would prevent him from successfully working collaboratively. CSOF No. 29. Defendant Sorensen testified that she could not place a student teacher such as Mr. Oyama who had expressed opinions that sexual relationships with minors were appropriate. CSOF No. 29. Defendant Sorensen admitted that she did not know of Mr. Oyama engaging in any acts of offensive or inappropriate behavior or sexual misconduct, or that Mr. Oyama was ever diagnosed as a threat to engage in any sexual misconduct. CSOF No. 30.

III.    SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Travelers Casualty and Surety Company of America v. Brenneke, 551 F.3d 1132, 1137 (9th Cir. 2009).

IV.  ARGUMENT

    A.  <u>Defendants Violated Mr. Oyama's Right to Free Speech</u>

Defendants have punished Mr. Oyama well after-the-fact and outside of any established procedures or legitimate pedagogical purposes for his speech and viewpoints expressed in classroom discussions. Such a censure of speech and viewpoint-discrimination is presumed unconstitutional "where the government is plainly motivated by the nature of the message rather than the limitations of the forum or a specific risk within that forum." <u>Flint v. Dennison</u>, 488 F.3d 816, 833 (9th Cir. 2007); <u>see also</u> <u>Ulrich v. City and County of San Francisco</u>, 308 F.3d 968, 976 (9th Cir. 2002) (holding that governmental entities may not punish government employees for speech that is protected by the First Amendment).

There is "no doubt that the First Amendment rights of speech and association extend to the campuses of state universities." <u>Flint</u>, 488 F.3d at 828. "[D]iscussion of controversial ideas on a college campus is essential to the background and tradition of thought and experiment that is at the center of our intellectual and philosophic tradition in the university setting...vital centers for the Nation's intellectual life…peculiarly the marketplace of ideas." <u>Brown v. Li</u>, 308 F.3d 939, 961 (9th Cir. 2002) (Reinhardt, J., dissent). "The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American

schools…[as t]he classroom is peculiarly the marketplace of ideas." Keyishian v. Board of Regents of University of State of New York, 385 U.S. 589, 603, (1967).

However, educators may restrict student speech "to encourage speech germane to the topic at hand and discourage speech unlikely to shed light on the subject" provided that any such limitation is "reasonably related to a legitimate pedagogical purpose" and not a pretext for punishing the student due to race, gender, economic class, religion, or political persuasion." Brown v. Li, 308 F.3d 939, 947-949 (9th Cir. 2002).  There must be reasonable standards under which to apply the pedagogical purpose, and courts have ruled that such a purpose supports adverse actions against students who have bypassed set approval processes. Brown, 308 F.3d at 952.  An unwritten, unannounced, and never-before enforced policy restricting speech could not be enforced because it had no standards to cabin discretion through content or history of enforcement, set no fixed standards, and officials could only provide post hoc rationalizations. OSU Student Alliance v. Ray, (9th Cir. 2012).

In utter disregard of the role of a college classroom as a "marketplace of ideas", Defendants have penalized Mr. Oyama for speech and viewpoints he expressed in various classes with which they disagreed.  Defendants' censure of Mr. Oyama's speech is somewhat unique because he was punished after-the-fact for comments that he made in various courses throughout his enrollment in the

Secondary Teaching Education Program.  In this case Mr. Oyama was not denied access to a forum and did not suffer a consequence in a particular class for speech which he uttered in that class.  In contradistinction to <u>Brown</u>, the Defendants acted outside of any set processes whereas Mr. Oyama followed the proper channels.  Defendants punished Mr. Oyama outside of any classes in which he had made comments or expressed viewpoints with which they disagreed and acted outside of any established procedures or legitimate pedagogical purposes.  This fact that Defendants acted outside of the classes in which Mr. Oyama expressed his views belies any pedagogical purposes which they may attempt to provide.  Defendants clearly acted pretextually as they attempted to "strengthen the case," "beef-up," and justify the decision to deny Mr. Oyama a student teaching placement after-the-fact based upon punishing him for his viewpoints and opinions.  Defendant Sorensen's assistant admitted that she revised Defendant Moniz's initial letter to, amongst other things, avoid going into Mr. Oyama's right to express his opinions.  Defendants did not act pursuant to or follow any fixed or reasonable standards, as they grasped for standards and/or policies to support the decision to deny Mr. Oyama a student teaching placement after they had already made the decision.

    B.    <u>Defendants Violated Mr. Oyama's Right to Due Process</u>

Defendants disciplinarily discharged Mr. Oyama from the Secondary Teaching Education Program without a fair hearing, violating his right to

procedural due process. Students who are formally or constructively expelled from state universities have a procedural due process entitlement to a fair hearing. Dixon v. Alabama State Board of Education, 294 F.2d 150, cert. denied, 368 U.S. 930 (1961); Gorman v. University of Rhode Island, 837 F.2d 7, 16 (1st Cir. 1988); Rowe v. Chandler, 332 F.Supp. 336 (D.Kan. 1971); Black Coalition v. Portland School District No. 1, 484 F.2d 1040, 1044-1045 (9th Cir. 1973); Brown, supra, 308 F.3d at 954-955 (noting that hearings do not have to be held for "academic" rather than disciplinary decisions regarding students). The decision to deny Mr. Oyama a student teaching placement was disciplinary rather than academic because there was no academic basis which supported this decision. Defendants clearly made their decision before Mr. Oyama had any opportunity whatsoever to be heard, and he never had the opportunity to appear for a hearing.

   Defendants' expulsion of Mr. Oyama from the Secondary Teaching Education Program also violated his right to procedural due process. Students being expelled for any reason have a substantive due process right to be free from arbitrary state action, have fair procedures applied to them, not be expelled for nonacademic or constitutionally impermissible reasons, have the decision made conscientiously and with careful deliberation, and for the decision not to be such a substantial departure from accepted academic norms as to demonstrate that the

11

person or committee responsible did not actually exercise professional judgment. Regents of University of Michigan v. Ewing, 474 U.S. 214, 223-226 (1985).

   Defendants acted arbitrarily, capriciously, unfairly, impermissibly, and substantially departed from any accepted norms to demonstrate that they failed to exercise professional judgment. Defendants contrived a process to support the predetermined decision made by Defendant Moniz in June of 2011 to deny Mr. Oyama a student teaching placement. Defendants struggled to find policies to support this decision after it was made as Defendant Sorensen's assistant assisted Defendant Moniz in "beefing up" his letter to include references to policies and attempt to obfuscate the fact that Mr. Oyama was being punished for expressing his opinions. Defendants' lack of standards is evident in Defendant Sorensen's lack of clarity as to the basis for denying Mr. Oyama's student teaching placement. Defendants failed to consult with at least two of the faculty members who had purportedly expressed concerns about Mr. Oyama as to whether he was suitable for a student teacher placement. Defendants made their decision without the guidance of any standards and had Mr. Oyama pursue an appeal through the StARFAC Committee which was not expressly authorized to review adverse actions and lacked established procedures to apply to Mr. Oyama's appeal. Defendants admittedly failed to timely inform Mr. Oyama of their concerns, which they asserted violated their own unspecified procedures. Defendants have clearly

person or committee responsible did not actually exercise professional judgment. Regents of University of Michigan v. Ewing, 474 U.S. 214, 223-226 (1985).

Defendants acted arbitrarily, capriciously, unfairly, impermissibly, and substantially departed from any accepted norms to demonstrate that they failed to exercise professional judgment. Defendants contrived a process to support the predetermined decision made by Defendant Moniz in June of 2011 to deny Mr. Oyama a student teaching placement. Defendants struggled to find policies to support this decision after it was made as Defendant Sorensen's assistant assisted Defendant Moniz in "beefing up" his letter to include references to policies and attempt to obfuscate the fact that Mr. Oyama was being punished for expressing his opinions. Defendants' lack of standards is evident in Defendant Sorensen's lack of clarity as to the basis for denying Mr. Oyama's student teaching placement. Defendants failed to consult with at least two of the faculty members who had purportedly expressed concerns about Mr. Oyama as to whether he was suitable for a student teacher placement. Defendants made their decision without the guidance of any standards and had Mr. Oyama pursue an appeal through the StARFAC Committee which was not expressly authorized to review adverse actions and lacked established procedures to apply to Mr. Oyama's appeal. Defendants admittedly failed to timely inform Mr. Oyama of their concerns, which they asserted violated their own unspecified procedures. Defendants have clearly

attempted to provide post hoc rationalizations to support their decision which contravened accepted norms as Mr. Oyama met all of the standards for a student teaching placement in the Secondary Teaching Education Program.

V.   CONCLUSION

Defendants are liable for violating Mr. Oyama's rights to free speech and due process as a matter of law.

DATED:   Honolulu, Hawaii, January 2, 2013.

/s/ Eric A. Seitz
ERIC A. SEITZ
DELLA A. BELATTI
RONALD N.W. KIM
SARAH R. DEVINE

Attorneys for Plaintiff