IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARK L. OYAMA | ) | CIVIL NO. CV12-00137 HG BMK |
| | ) | (OTHER CIVIL ACTION) |
| Plaintiff, | ) | |
| | ) | DEFENDANT UNIVERSITY OF |
| v. | ) | HAWAI`I'S MEMORANDUM IN |
| | ) | SUPPORT OF MOTION |
| UNIVERSITY OF HAWAI`I; | ) | |
| CHRISTINE SORENSON; JEFFREY | ) | |
| MONIZ; JOHN DOES 1-25; JANE DOES | ) | |
| 1-25, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANT UNIVERSITY OF HAWAI`I'S
MEMORANDUM IN SUPPORT OF MOTION**

# Table of Contents

Table of Authorities .............................................................................i-ii

I.     Introduction...............................................................................1

II.    Statement of Facts.......................................................................1

III.   Standard for Summary Judgment ....................................................6

IV.    Argument and Analysis ................................................................8

    A.   Plaintiff's First Cause of Action for Violation of His First
        Amendment Right to Free Speech and Assembly Should be Dismissed 8

    B.   Plaintiff's Second Cause of Action Should Be Dismissed ...................18

        1.   Plaintiff Has No Procedural Due Process Claim ...........................18

        2.   Plaintiff Has No Substantive Due Process Claim..........................22

    C.   Plaintiff's Third Cause of Action Should Be Dismissed .....................24

    D.   Plaintiff's State Law Claims Should Be Dismissed  ...........................24

V.     Conclusion ...............................................................................25

# Table of Authorities

**Cases**                                                                **Page No.**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)......................................7
*Anheuser-Busch, Inc. v. Natural Beverage Distribs.*,
    69 F.3d 337 (9th Cir. 1995) ...............................................................................7
*Banks v. Dominican College*,
    35 Cal. App. 4th 1545(1995) ...................................................................... 12-15
*Bd. of Curators of the Univ. of Mo. v. Horowitz*,
    435 U.S. 78 (1978)..............................................................................................9
*Bd. of Regents v. Southworth*,
    529 U.S. 217 (2000)......................................................................................9, 10
*Bell v. Ohio State Univ.*,
    351 F.3d 240 (6th Cir. Ohio 2003) ...................................................................23
*Bilut v. Northwestern Univ.*,
    645 N.E.2d 536 (Ill. App. Ct. 1995) .................................................................14
*Board of Curators of University of Missouri v. Horowitz*,
    435 U.S. 78, 55 L. Ed. 2d 124, 98 S. Ct. 948 (1978).........................................20
*Brown v. Li*,
    308 F.3d 939 (9th Cir. 2002)............................................... 11, 12, 15, 16
*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)..................................6, 7
*Clements v. Nassau County*,
    835 F.2d 1000, 1004 (2d Cir. 1987) ..................................................................13
*Hazelwood Sch. Dist. v. Kuhlmeier*,
    484 U.S. 260 (1988)........................................................................... 10, 11, 12
*Keyishian v. Bd. of Regents*,
    385 U.S. 589 (1967)............................................................................................9
*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990)...................................7
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)....................................6
*Morse v. Frederick*,
    551 U.S. 393 (2007)..........................................................................................10
*O.S.C. Corp. v. Apple Computer, Inc.*,
    792 F.2d 1464, (9th Cir. 1986) ...........................................................................7

**Cases**                                                                 **Page No.**

*Olim v. Wakinekona,*
    461 U.S. 238, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983)....................................19
*Parratt v. Taylor,*
    451 U.S. 527, 101 S. Ct. 1908, 68 L.Ed.2d 420 (1981).....................................18
*Regents of the University of Michigan v. Ewing,*
    474 U.S. 214 (1985).................................................................... 13, 21
*Sung Park v. Ind. Univ. Sch. of Dentistry,*
    692 F.3d 828 (7th Cir. Ind. 2012) .................................................. 19, 23
*Sweezy v. New Hampshire,*
    354 U.S. 234 (1957)...........................................................................9
*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*
    393 U.S. 503 (1969)..........................................................................10
*Town of Castle Rock v. Gonzales,*
    545 U.S. 748, 125 S. Ct. 2796, 162 L. Ed. 2d 658 ............................................19
*Villiarimo v. Aloha Island Air Inc.,*
    281 F.3d 1054 (9th Cir. 2002) ...........................................................7
*Washington v. Glucksberg,*
    521 U.S. 702, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997) .......23

**Rules**

Fed. R. Civ. P. 56(a)...............................................................................6
Fed. R. Civ. P. 56(e)...............................................................................6

## DEFENDANT UNIVERSITY OF HAWAIʻI'S MEMORANDUM IN SUPPORT OF MOTION

## I.   INTRODUCTION

By this motion, Defendant UNIVERSITY OF HAWAII ("UH" or "University") requests entry of summary judgment in its favor, and against Plaintiff Mark Oyama as to all claims alleged against UH in Plaintiff's Complaint filed on March 9, 2012 ("Complaint").  In short, Plaintiff's Complaint alleges that UH violated his constitutional rights to free speech and assembly, and due process, under the federal and state Constitutions.

## II.   STATEMENT OF FACTS

Plaintiff Mark Oyama ("Oyama" or "Plaintiff") was a student, also known as a teacher candidate, in the College of Education's ("COE") Post Baccalaureate Certificate in Secondary Education (PBSCE) Program at the University of Hawaiʻi, Mānoa campus.  Declaration of Christine Sorensen ("Sorensen Decl.") at ¶ 3. Oyama began taking courses in the Summer 2010 session.  *Id.*

Christine Sorensen ("Dean Sorensen") was the Dean of the COE at UH circa August 2007 through August 2012.  Sorensen Decl. at ¶ 1.  Jeffrey Moniz ("Moniz") is a faculty member at UH and has been the Director of the Secondary Program at the Institute for Teacher Education ("ITE") at the COE since August 2009.  Moniz Decl. at ¶¶ 2-3.

The COE's PBCSE program is a certificate program for the preparation of secondary teachers (grades 7-12), and is designed for teacher candidates who possess a baccalaureate degree and wish to obtain eligibility to apply to the Hawaii Teacher Standards Board for a license to teach.  Sorensen Decl. at ¶ 4.  The mission of the Secondary Teacher Education Program, also applicable to the PBCSE, is to prepare candidates, among other things, to be effective classroom teachers, to meet the standards of licensure in their content field, and demonstrate professionalism.  *Id.*

The Secondary Teacher Education Program Handbook ("Program Handbook") provides teacher candidates with information about the program including related policies and procedures and standards related to the teaching profession, as well as information about the steps leading to and directly following the student teaching experience.  Sorensen Decl. at ¶5; Declaration of Jeffrey Moniz ("Moniz Decl.") at ¶ 9; Exhibit 2.  The Program Handbook (revised September 2009) was provided to Oyama and was applicable to Oyama during the time he was enrolled in the PBSCE program.  *Id.*

In the summer of 2010 and in November 2010, Frank Walton ("Walton"), Oyama's instructor for the ITE 401 and 440 courses, shared his concerns with Moniz about Oyama's suitability to teach.  Moniz Decl. at ¶ 10; Exhibit 3.

In November 2010, Katherine Ratliffe ("Ratliffe"), Oyama's instructor for

2

his EDEP 631 course, shared her concerns with Moniz relating to Oyama's

suitability to be a teacher.  Moniz Decl. at ¶ 11; Exhibit 4.  Ratliffe relayed her

concerns about statements made by Oyama about child predation and the age of

consent which caused her concern that Oyama "may not be aware of and in

agreement with safety issues about the adolescents who will be in his care."  *Id*.

In Fall 2010, Oyama was enrolled in a field experience course, also known

as a teaching practicum, course during which he was assigned to a Hawaiʻi

Department of Education ("DOE") school, Stevenson Middle School, and a

classroom mentor teacher, Charles Souza.  Moniz Decl. at ¶ 12.

The classroom mentor teacher's role is to assess the student teacher's

performance and share his or her observations or concerns with the University.

Moniz Decl. at ¶ 12.  Oyama received ratings of "unacceptable" in his field

experience evaluations which corroborated the concerns expressed by faculty

members about Oyama's suitability to teach. Moniz Decl. at ¶ 12.  The practicum

experience provided an indication of how Oyama would function as a teacher in a

school setting.  Moniz Decl. at ¶ 12; Exhibit 5.

In January 2011, Oyama submitted his application for a student teaching

assignment for the Fall 2011 semester.  Moniz Decl. at ¶ 13.

Beginning in May 2011, Jason Siegel ("Siegel"), Oyama's instructor for the

SPED 445 course, shared his concerns with Moniz relating to Oyama's suitability

for the teaching profession.  Moniz Decl. at ¶ 14.  Siegel sent Moniz a series of

emails relaying his concerns about Oyama in his classroom and his assessment that

Oyama was unable to demonstrate willingness to accommodate students with

disabilities.  Moniz Decl. at ¶ 14; Exhibit 6.

On July 8, 2011, Moniz informed Oyama via letter that Moniz had reviewed

Oyama's application to student teach for the Fall 2011 semester and that his

application was not approved.  Moniz Decl. at ¶ 15; Exhibit 7.

Oyama responded to Moniz via letter on July 18, 2011.   Moniz Decl. at ¶

16; Exhibit 8.

On July 29, 2011, Moniz informed Oyama that Moniz had reviewed

Oyama's July 18, 2011 letter and after further consideration and consultation, he

confirmed his earlier decision to not approve Oyama's application for student

teaching.  Moniz Decl. at ¶ 17; Exhibit 9.  Moniz informed Oyama that he could

file an appeal.  *Id*.

Oyama filed an academic grievance complaint about Moniz's decision to

deny Oyama a placement for student teaching.  Sorensen Decl. ¶11.  In August

2011, Oyama, via the Office of Vice Chancellor for Academic Affairs ("VCAA")

at the University, requested a review of the academic grievance complaint he had

filed.  Moniz Decl. at ¶ 17.  The Office of the VCAA tasked the COE with

responding to Oyama's grievance complaint as the COE was in the best position to

determine professional fitness and dispositions for student teaching.  Sorensen Decl. at ¶ 12.   Oyama was informed that his grievance appeal would be addressed at the Dean's level at the COE.  Sorensen Decl. at ¶ 12; Exhibit 10.

Dean Sorensen convened a grievance committee composed of the Student Admission/Retention Faculty Advisory Committee ("STARFAC") to investigate and review Oyama's academic grievance complaint and make recommendations. Sorensen Decl. ¶ 13.  The STARFAC conducted its review and made its recommendations in a report that was provided to Dean Sorensen on or about November 17, 2011.  Sorensen Decl. ¶13; Exhibit 11.  The STARFAC concluded that there were some procedural violations as Oyama did not receive feedback about his performance in his Fall 2010 field experience course until well after the semester had concluded.  *Id*.  The STARFAC also concluded that Oyama should not be allowed to student teach based on his professional dispositions as evidenced in comments made during classes and his interview with the STARFAC and concerns expressed by faculty and the classroom mentor teacher.  *Id.*

On December 15, 2011, Dean Sorensen rendered a decision regarding Oyama's grievance appeal, and determined that there was a valid basis to not allow Oyama to student teach.  Sorensen Decl. ¶16; Exhibit 12.

Dean Sorensen considered Oyama's proposed remedies stated in his appeal, and offered Oyama a stipend in the amount of $2,500.00 to reimburse him for the

costs of tuition, fees, etc. for the Spring 2011 semester and to change his grades in that semester's courses to "W" grades.  Sorensen Decl. ¶23, Exhibit 12.

Oyama declined the Dean's offer of a tuition refund filed his lawsuit thereafter.  Sorensen Decl. ¶23

## III.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)0. The moving party bears the initial burden of showing the  absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990); *see also Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy." *O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248.

## IV.    ARGUMENT AND ANALYSIS

### A.    Plaintiff's First Cause of Action for Violation of His First Amendment Right to Free Speech and Assembly Should be Dismissed

Oyama alleges a violation of his constitutional right to free speech and

assembly as secured by the First Amendment of the U.S. Constitution and Article I

of the Hawai'i Constitution.  Oyama's Complaint alleges the following:

> 27.    Defendants' removal of Plaintiff from his educational program interfered with Plaintiff's rights that are explicitly protected by the First Amendment of the United States Constitution and Article I, §§ 4 of the Hawai'i Constitution.

> 28.    By unduly punishing Plaintiff's speech and conduct, Defendants have deprived Plaintiff of rights secured by the speech and assembly clauses of the First Amendment (as incorporated by the Fourteenth Amendment ) as well as under Article I, §§ 2, 4m and 6 of the Hawai'i State constitution, inter alia.

> 29.    Defendants' acts complained of herein were directed toward intimidating Plaintiff and chilling the exercise of his protective expressive rights by, among other means, silencing or diluting his message and by deterring persons from joining with Plaintiff in the lawful exercise of their constitutional rights.

*See* Complaint at ¶¶ 27-29.

Although Oyama labels Defendants' actions as punitive actions undertaken

for the purpose of punishing his speech and conduct and intimidating Oyama to

chill his speech, the evidence and the record in this case belies Oyama's

characterization of Defendants' actions.

Academic freedom of both professors and students at the university level are a "special concern" of the First Amendment. *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967). Courts across the nation have long characterized this "special concern" of academic freedom given to professors and universities as the right "to determine for [themselves] on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study." *Sweezy v. New Hampshire*, 354 U.S. 234, 263 (1957). The academic freedom of a university was recently affirmed again by the Supreme Court stating "our understanding of academic freedom has included not merely liberty from restraints on thought, expression, and association in the academy, but also the idea that universities and schools should have the freedom to make decisions about how and what to teach." *Bd. of Regents v. Southworth*, 529 U.S. 217, 237 (2000). Additionally, the Supreme Court has found that professors in particular have wide discretion in their evaluation of the academic performance of their students and that courts, and even university administrators (except in accordance with established policies), are ill-equipped to evaluate student performance. *See Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78 (1978).

While the Supreme Court has granted substantial deference to professors' and universities' academic freedom to create and implement curriculum and to

dismiss students for academic reasons, it has also ruled that students need not

"shed their constitutional rights to freedom of speech or expression at the school

house gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 506-07

(1969) (finding students had the right to wear armbands protesting the Vietnam

war to class).  However, this acknowledgement of students' First Amendment

rights has been consistently limited by the courts to political speech.  *See, Morse v.*

*Frederick*, 551 U.S. 393 (2007).  Even the *Tinker* Court acknowledged that its

holding did not "concern speech or action that intrudes upon the work of the

schools or the rights of other students" and that schools could restrict speech that

"substantially interferes with [its] work" or that is "ungrammatical, poorly written,

inadequately researched, biased or prejudiced, vulgar or profane, or unsuitable for

immature audiences." *Tinker,* 393 U.S. 503, 508-509 (1969).  This restriction has

been further defined as the difference between speech in a public forum and speech

that is curricular in nature, i.e. "supervised by faculty members and designed to

impart particular knowledge or skills to student participants and audiences."

*Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271 (1988). [1]  "Educators are

entitled to exercise greater control [] to assure that participants learn whatever

---

[1] While *Hazelwood Sch. Dist. v. Kuhlmeier* was decided in relation to the public school system, the 9th Circuit has consistently applied its holdings to cases involving colleges and universities. *See Brown v. Li*, 308 F.3d 939, 947 (2002).  However, a footnote in a Supreme Court case does state that *Hazelwood* may be "arguably distinguishable" because of unstated differences between high school and college education.  *Bd. of Regents v. Southworth*, 529 U.S. 217, 238 n.4 (2000).

lessons the activity is designed to teach, [], and that the views of the individual speaker are not erroneously attributed to the school." *Id*. at 484 U.S. 271.

The Ninth Circuit decision in *Brown v. Li*, 308 F.3d 939 (9th Cir. 2002) is instructive on this issue. Brown was a graduate student who was told that his thesis committee would not approve his thesis unless he removed the "Disacknowledgements" section that was replete with obscenities. Although the university ultimately awarded Brown his degree, it refused to place his thesis in the library because Brown refused to remove the offending section. The court characterized the faculty members' actions not as a curtailing of free speech, but as a permissible determination that the thesis did not meet the academic requirements of the graduate program and thus would not be added to the library's collection. Analyzing a number of Supreme Court cases, the *Brown* court found that "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns" and that, despite the Supreme Court's silence on the issue of curricular speech in colleges, other Supreme Court cases allow that, "core curricular speech - that which is an integral part of the classroom teaching function of an educational institution - differs from students' extracurricular speech and that a public educational institution retains discretion to prescribe its curriculum." *Brown*, at

308 F.3d 947-951.

The *Brown* court stated that this standard of curricular vs. extracurricular speech found in *Hazelwood* adequately "balances a university's interest in academic freedom and a student's First Amendment rights. It does not immunize the university altogether from First Amendment challenges but, at the same time, appropriately defers to the university's expertise in defining academic standards and teaching students to meet them." *Id*. at 952.  Thus, the *Brown* court recognized that an assignment can require a student to write or defend a paper from a particular viewpoint, even if the student disagrees with that viewpoint, so long as the requirement serves a legitimate pedagogical purpose (e.g. critical thinking or conformance with professional norms). *Id*. at 953.

Another instructive case which is nearly identical to the instant case is *Banks v. Dominican College*, 35 Cal. App. 4th 1545, 1547-1548 (1995). A student at Dominican College ("College"), enrolled in the graduate teacher licensing program, was dismissed from the program "after a number of disturbing episodes of unprofessional or unacceptable conduct by appellant caused the program's faculty to reasonably believe she would not be able to successfully complete the course of study or become a suitable teacher of young people." *Id*. at 1547-1548. The court upheld summary judgment in favor of the College, finding "that their actions were not arbitrary or capricious or otherwise wrongful." *Id*. at 1550.  The

court noted that there is a "widely accepted rule of judicial nonintervention into the academic affairs of schools" and thus it "must uphold the university's decision 'unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'"  *Id.* at 1551 (*citing Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985)).  The court held that the appropriate standard to use when reviewing academic free speech claims is whether a court finds the decision "to be arbitrary and capricious, not based upon academic criteria, and the result of irrelevant or discriminatory factors." *Id.* at 1551.  Because of this highly deferential standard in cases of academic dismissal "educational institutions have the right to receive summary judgment unless there is evidence from which a jury could conclude that there was no rational basis for the decision or that it was motivated by bad faith or ill will unrelated to academic performance." *Id.* at 1551 (*citing Clements v. Nassau County*, 835 F.2d 1000, 1004 (2d Cir. 1987)).

Quoting a similar case involving Northwestern University, the *Banks* court reaffirmed the arbitrary and capricious standard and placed the burden on the plaintiff:

> a university may not act maliciously by arbitrarily and capriciously
> dismissing or refusing to award a degree to a student on the ground of
> academic deficiencies if said student fulfills its degree requirements.
> A plaintiff's burden of establishing arbitrary and capricious conduct
> on the part of a private college or university, however, is a heavy one.

> A plaintiff must show that [her] dismissal was 'without any
> discernible rational basis.

*Banks* at 1552 (*citing Bilut v. Northwestern Univ.*, 645 N.E.2d 536, 543 (Ill. App.

Ct. 1995)).  The *Banks* court found that the plaintiff failed to provide any evidence

that might give a jury reason to believe the college acted arbitrarily or capriciously

in its decision making or that the decision was made in bad faith or because of

personal animus on the part of all involved.  Further, the *Banks* court rejected the

plaintiff's claim of retaliation by faculty members with whom there existed

personal disagreements as raising a question of material fact sufficient to derail a

motion for summary judgment "because the evidentiary record indicated the

decision in fact was made or concurred in by numerous faculty members, as in our

case, and was based upon sound academic criteria: 'In short, the record shows that

there was a discernible rational basis for the decisions of defendant and its faculty

regarding plaintiff's dissertation.'"  *Banks* at 1552 (*citing Bilut v. Northwestern

Univ*. 645 N.E.2d at 543).

Here, the speech attributed to Oyama by his faculty (Walton, Ratliffe,

Siegel) and his DOE mentor teacher (Souza) was made in the course of class

discussions or assignments.  With Ratliffe, Oyama expressed his views concerning

the inappropriateness of laws restricting sexual relationships with minors during

class discussions.  Ratliffe spoke personally with Oyama about his views and

reported that he refused to change his opinions.  Walton reported that Oyama had

expressed that he would come to school armed if necessary and that he refused to learn that "telling is not teaching" and how to adapt teaching styles to different learning styles while in class. Siegel reported that Oyama made numerous controversial comments and discussion posts regarding children with disabilities, the inappropriateness of the "People First Language" requirements of the class, that he was quite argumentative, and that he remained highly critical of various school doctrines concerning children with disabilities including the policy of inclusion and even the idea that children should be classified with disabilities at all. Souza gave Oyama a poor evaluation in the field experience course based on Oyama's interaction with the children and his refusal to adapt or learn from the mentor teacher. All of these statements or actions were made in the context of class discussions or class assignments and similar to <u>Brown v. Li</u>, a professor has the First Amendment right to require a student to learn or express a particular viewpoint in order to achieve a grade and the student does not have the right to contest that grading decision.

Similarly, as in *Banks v. Dominican College*, because all of the statements were made in the course of curricular activities there is a rational basis for the recommendations made by the grievance committee (STARFAC) based on information reported by several faculty members, each of which had personal interactions with Oyama. In fact, the STARFAC was an independent committee

that reviewed evidence and interviewed individuals including Oyama before

rendering its findings affirming the decision to deny Oyama's student teaching

application.

Here, similar to *Brown*, UH was not attempting to curtail Oyama's speech or

penalize him in any fashion, but had made permissible determinations about

Oyama's suitability or fitness to teach students – an academic judgment based on

the faculty members' professional judgment, assessment and observations of

Oyama's dispositions toward teaching students.  Given the standards approved by

the State of Hawaiʻi for teachers and licensure and the NCATE standards under

which the licensing programs operate, the concerns expressed by the faculty

pertaining to Oyama reflected that Oyama did not meet the professional

dispositions and standards expected of teachers. Sorensen Decl. ¶ 18.  PBCSE

students are evaluated on their dispositions as aligned with the professional

standards, and when they fail to meet them, they can be denied completion of the

teaching program.  Sorensen Decl. ¶ 19.  Faculty make professional judgments

about the suitability as well as the readiness of the teacher candidate to do student

teaching.  Sorensen Decl. ¶ 20.  With respect to Oyama, his suitability or fitness for

student teaching or lack thereof was based on faculty's assessments of his

professional dispositions and the standards applicable to student teaching, which

demonstrated that Oyama presented dispositions that were not compatible with

16

NCATE standards, program standards, and the professional dispositions expected of teachers.   Sorensen Decl. ¶ 21.  Some of the areas of dispositions where Oyama's performance was noted as unacceptable on his final evaluation for his field experience include: not receiving feedback, defensiveness, minimal effort, inappropriate dress, disregard for self-reflection, little awareness of effect on others, disinterest in education, and working collaboratively with others.  *See* Exhibit 5 and Exhibit 13 at 6-7; *see also* Exhibit 11 at pages numbered H00078-81.

Dean Sorensen considered information provided by faculty members, the STARFAC grievance committee, information provided by Moniz, and conducted her own independent assessment that Oyama was not suitable for student teaching. Sorensen Decl. ¶ 17.   Dean Sorensen met with Oyama to discuss her decision regarding his appeal.  *Id.*  Oyama did not provide information to cause Dean Sorensen to change her decision denying his appeal.  Sorensen Decl. ¶ 17.  Dean Sorensen's discussions with Oyama and his responses confirmed the concerns previously reported by his instructors and mentor teacher that Oyama lacked the professional dispositions for and did not meet the standards for student teaching.

The evidence in this case establishes that Defendants' actions were not actions undertaken to penalize Oyama in any way or to otherwise curtail his speech or conduct, but were academic decisions based on professional judgments regarding Oyama's suitability to teach.  Defendants' actions did not violate

Oyama's First Amendment rights.  Accordingly, Oyama's First Cause of Action

should be dismissed.

### B.    Plaintiff's Second Cause of Action Should Be Dismissed.

Plaintiff alleges the following with respect to his Second Cause of Action:

> 32.    The actions of Defendants complained of herein
> were imposed without adequate process. The lack of
> procedural protections constitutes a violation of the Due
> Process Clause of the Fourteenth Amendment and Article
> I, §§ 5 of the Hawai'i State Constitution.

*See* Complaint at ¶ 32.  It appears from the above allegation that Oyama is

asserting a violation of his procedural due process as he complains about actions

being undertaken without procedural protections.  Based on well-established law,

Oyama has no actionable claim for violations of procedural, or substantive, due

process.

### 1.    Plaintiff Has No Procedural Due Process Claim

To prevail in a claim alleging deprivation of procedural due process, a

plaintiff must prove "that the conduct complained of deprived the plaintiff of a

cognizable property interest" without due process.  *See Parratt v. Taylor*, 451 U.S.

527, 101 S. Ct. 1908, 68 L.Ed.2d 420 (1981).

Here, Oyama asserts an interest in his alleged right to university process

prior to being denied a placement in student teaching. That is, Oyama is

complaining about the deprivation of his "right" to receive sufficient and timely

information on standards he is expected to meet and the procedures used to evaluate students' achievements in their academic program, and that the field experience evaluation form did not contain his signature and was not provided to him before allowing him to continue in the PBSCE program through Summer 2011. *See, e.g.,* Exhibit 8 at p.2, Oyama's July 18, 2011 letter.

The Supreme Court has emphasized that the "federal Constitution's Due Process clause does not protect an interest in other process." *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. Ind. 2012); *see also Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983) ("Process is not an end in itself. The State may choose to require procedures . . . but in making that choice the State does not create an independent substantive right."); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 769-73, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (Souter, J., concurring) (no federal due process protection for "state-law benefit . . . [that] is itself a variety of procedural regulation"). Thus, Oyama's interest in or purported right to a university process is not protected by the federal Constitution.  Doing so would supply "federal process as a substitute simply for state process." *Castle Rock*, 545 U.S. at 772 (Souter, J., concurring).  As Oyama has no cognizable property interest, he cannot prevail on his claim for violation of procedural due process.

Even if the Court assumes *arguendo* that Plaintiff has asserted a protected property right, Plaintiff's claim would fail. *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 55 L. Ed. 2d 124, 98 S. Ct. 948 (1978), establishes the standard for procedural due process in the context of academic decisions.  In *Horowitz*, the plaintiff argued that the university had violated her right to procedural due process when it dismissed her for academic reasons without first giving her a hearing. *Id*. at 79-80. The Court, without deciding whether the plaintiff had a protected liberty or property interest in continuing her education, rejected her argument. The Court held that, when dismissing a student for academic reasons, a university need not hold a hearing.  *Id*. at 85, 89-91.  A university meets the requirements of procedural due process so long as the dismissal decision is "careful and deliberate." *Id*. at 85.  The Court ruled that procedural due process was not necessary when the decision was based upon the student's academic performance or ability.

> A school is an academic institution, not a courtroom or administrative hearing room…Academic evaluations of a student in contrast to disciplinary determinations, bear little resemblance to the judicial and administrative fact-finding proceedings to which we have traditionally attached a full hearing requirement…Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision making.

*Horowitz*, 435 U.S. at 90.

Seven years after *Horowitz*, the Supreme Court had occasion to re-address the issue of the scope of judicial review of a student's challenge to an academic decision. In *Regents of the University of Michigan v. Ewing*, 474 U.S. 214 (1985), a medical student was not allowed to re-take an examination because of his overall poor academic performance. The student challenged his dismissal on constitutional grounds, claiming a denial of due process. The Court interpreted Ewing's claim as an allegation that the faculty had misjudged his academic ability, and found that the faculty's decision was made "conscientiously and with careful deliberations." The Court rejected Ewing's argument that he was entitled to due process or judicial review:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they many not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

474 U.S. at 225.

Here, UH's decision to not place Plaintiff in student teaching involved careful and deliberate reviews at multiple levels. Oyama's application to student teach for Fall 2011 was initially denied by Moniz, the Director of the Secondary Program at the ITE, on July 18, 2011 based on faculty concerns about Oyama's suitability for teaching as informed by their classroom observations and assessments of Oyama's professional dispositions toward teaching. After Oyama

21

submitted a response to Moniz, Moniz again considered Oyama's matter and

consulted faculty, and stood by his decision to deny Oyama's application to teach

students.  UH afforded Oyama an appeals procedure, of which he took advantage,

by filing an academic grievance appealing Moniz's decision to not place Oyama in

student teaching.  Oyama's grievance was reviewed by Dean Sorensen.  Before

Dean Sorensen rendered her decision with regard to Oyama's appeal, she convened

a grievance committee consisting of three members to review Oyama's appeal and

make recommendations.  Thereafter, Dean Sorensen, on December 15, 2011,

rendered her decision based on her own independent assessment of the information

pertaining to Oyama.  Thus, three different parties (Moniz, the STARFAC

grievance committee consisting of three members, and Dean Sorensen) separately

concluded that Oyama should not be allowed to teach students and that the

decision to not place him for student teaching was appropriate.  The University

satisfied the requirements for procedural due process.

Accordingly, the Court should dismiss Oyama's second cause of action.

### 2.    Plaintiff Has No Substantive Due Process Claim

Nothing in Oyama's Complaint indicates a claim for violation of his

substantive due process rights.  However, even if Oyama attempts to now include

a substantive due process claim in his second cause of action, such a claim would

also be inactionable and subject to dismissal.  As the Supreme Court pointed out in

*Washington v. Glucksberg*, 521 U.S. 702, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L.

Ed. 2d 772 (1997), "the [Due Process] Clause . . . provides heightened protection

against government interference with certain fundamental rights and liberty

interests." *Id*. at 720.  The list of such rights and interests is, however, a short one,

including things like the right to marry, the right to have children, the right to

marital privacy, the right to contraception, and the right to bodily integrity. *Id*.

"Conspicuously missing on this list is the right to follow any particular career.

Indeed, no court could recognize such a right without acting in the teeth of the

many cautions that the Supreme Court has given against expanding the concept of

substantive due process, 'because guideposts for responsible decisionmaking in

this unchartered area are scarce and open-ended.'" *Id*.

Here, Oyama does not have a viable claim for a substantive due process

violation because his continued enrollment in the COE's Secondary Program at the

ITE is not a property interest protected by the Due Process Clause. *See e.g*., *Sung*

*Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. Ind. 2012) ("Park's

interest in becoming a dentist is not one that the due process clause protects."); *Bell*

*v. Ohio State Univ*., 351 F.3d 240, 251 (6th Cir. Ohio 2003) ("[W]e can see no

basis for finding that a medical student's interest in continuing her medical school

education is protected by substantive due process.").

Accordingly, even if Oyama were to assert a substantive due process claim,

such a claim would be dismissed as Oyama has no protectable right or interest

protected by the due process clause.

### C.    Plaintiff's Third Cause of Action Should Be Dismissed

Plaintiff's Third Cause of Action fails to articulate a claim against

Defendants.  The Complaint alleges only the following:

> 34. Plaintiff is informed and believes, and thereupon
> alleges that the Defendants acted herein knowingly,
> intentionally, and deliberately.

Complaint at ¶ 34.  There is no actionable claim, under federal or state law, against

a party for acting knowingly, intentionally, and deliberately.

### D.    Plaintiff's State Law Claims Should Be Dismissed

Oyama asserts the Hawai'i State Constitution as the state law basis for his

first and second causes of action.  The Hawai'i State Constitution provides no

greater rights or constitutional protections to Oyama than the First and Fourteenth

Amendments of the U.S. Constitution which are Oyama's federal law basis for said

claims.  Thus, the same analysis discussed above with respect to Plaintiff's claims

under federal law would be applicable to his state constitutional claims warranting

dismissal of those claims.

## V.    <u>CONCLUSION</u>

For all the foregoing reasons, Defendant University of Hawaii hereby

requests that the Court grant its motion and enter summary judgment in favor of

UH as to all claims alleged against UH in Plaintiff's Complaint filed on March 9, 2012.

     Dated:  Honolulu, Hawai`i,   January 2, 2013    .

                                       /s/  Christine Tamashiro      
                                       DAROLYN H. LENDIO
                                       RYAN M. AKAMINE
                                       CHRISTINE TAMASHIRO
                                       Attorneys for Defendants
                                       UNIVERSITY OF HAWAI`I;
                                       CHRISTINE SORENSEN; and
                                       JEFFREY MONIZ