IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |  |
|---|---|---|
| MARK L. OYAMA, | ) | Civ. No. 12-00137 HG-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| UNIVERSITY OF HAWAII; | ) | |
| CHRISTINE SORENSEN; JEFFERY | ) | |
| MONIZ; JOHN DOES 1-25; JANE | ) | |
| DOES 1-25, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**ORDER GRANTING DEFENDANT UNIVERSITY OF HAWAII'S MOTION FOR SUMMARY JUDGMENT (ECF No. 24)**
**AND**
**GRANTING DEFENDANTS CHRISTINE SORENSEN AND JEFFERY MONIZ'S MOTION FOR SUMMARY JUDGMENT (ECF No. 26)**
**AND**
**DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 22)**

Plaintiff Mark L. Oyama sues pursuant to 42 U.S.C. § 1983 because his application for a student teaching position was denied.  Plaintiff challenges the denial, asserting that the Defendants' actions violated rights guaranteed by the First and Fourteenth Amendments of the United States Constitution and Article I, §§ 2, 4, 5, and 6 of the Hawaii State Constitution. Plaintiff seeks damages and injunctive relief.  Defendants move

1

for summary judgment on all claims in Plaintiff's Complaint. Plaintiff moves for partial summary judgment on the issue of liability.

Plaintiff's claims against the University of Hawaii are barred by the Eleventh Amendment of the United States Constitution doctrine of sovereign immunity.  The claims for monetary relief against Defendants Christie Sorensen and Jeffery Moniz, in their official capacities, are also barred by the Eleventh Amendment.

The Defendants did not violate Plaintiff's rights under the First Amendment of the United States Constitution or the Due Process Clause of the Fourteenth Amendment of the United States Constitution.  Defendants Sorensen and Moniz, in their official capacities, are entitled to summary judgment as to claims for prospective injunctive relief.  Plaintiff's claims against Defendants Sorensen and Moniz, in their individual capacities, are barred by qualified immunity.

Defendant University of Hawaii's Motion for Summary Judgment (ECF No. 24) is **GRANTED**.  Defendants Christine Sorensen and Jeffery Moniz's Motion for Summary Judgment (ECF No. 26) is **GRANTED**.  Plaintiff's Motion for Partial Summary Judgment (ECF No. 22) is **DENIED**.

## PROCEDURAL HISTORY

On March 9, 2012, Plaintiff filed his Complaint.  (ECF No.

2

1.)

On January 2, 2013, Plaintiff filed a Motion for Partial
Summary Judgment as to Defendants' Liability, (ECF No. 22), and a
separate Concise Statement of Facts in support.  (ECF No. 20.)

On January 2, 2013, Defendant University of Hawaii filed a
Motion for Summary Judgment, (ECF No. 24), and a separate Concise
Statement of Facts in support.  (ECF No. 25.)

On January 2, 2013, Defendants Christine Sorensen and
Jeffery Moniz filed a Motion for Summary Judgment, (ECF No. 26),
and a separate Concise Statement of Facts in support.  (ECF No.
27.)  Although filed separately, the Concise Statements of Facts
submitted by the Defendants (Docs. 25 and 27) are identical
documents.

On February 7, 2013, Plaintiff filed an Opposition to
Defendant University of Hawaii's motion (ECF No. 29) and an
Opposition to Defendants Sorensen and Moniz's motion.  (ECF No.
30.)  Plaintiff filed a separate Counter-Statement of Facts in
Opposition to both of the Defendants' motions.  (ECF No. 31.)

On February 7, 2013, Defendants University of Hawaii,
Sorensen, and Moniz filed a joint Opposition to Plaintiff's
motion.  (ECF No. 32.)  Defendants filed a separate Counter-
Statement of Facts in Opposition to Plaintiff's motion.  (ECF No.
33.)

On February 22, 2013, Plaintiff filed a Reply in support of

his motion.  (ECF No. 39.)

On February 22, 2013, Defendants Sorensen and Moniz filed a Reply in support of their motion, (ECF No. 40.), and Defendant University of Hawaii filed a Reply in support of its motion. (ECF No. 41.)

On March 12, 2013, the Court held a hearing on the motions.

## BACKGROUND

In the Summer of 2010, Plaintiff Mark L. Oyama ("Plaintiff" or "Oyama") enrolled in the University of Hawaii College of Education's Post Baccalaureate Certificate in Secondary Education Program ("Teaching Program").  During this time, Defendant Christine Sorensen ("Sorensen") was the Dean of the College of Education and Defendant Jeffery Moniz ("Moniz") was a faculty member and Director of the Teaching Program.

The Teaching Program is designed for students who wish to obtain eligibility to apply to the Hawaii Teacher Standards Board for a license to teach.  (Defendants' Concise Statement of Facts ("CSF") at ¶ 4, ECF No. 25.)  The Teaching Program's handbook states that the College's mission is to employ and prepare educators who are knowledgeable, effective, and caring professionals.  (Id. at Ex. 2 at 7-8.)  Pursuant to the Handbook, the Teaching Program requires a high level of professionalism demonstrated through ethical behavior, competence, reflection, fairness, respect for diversity, and a commitment to inclusion

and social responsibility.  (Id.)  The Handbook also states that
the College of Education's conceptual framework is consistent
with the standards of the Hawaii Teacher Standards Board, the
National Council for the Accreditation of Teacher Education, and
the National Education Association.  (Id. at Ex. 2 Introduction.)

Plaintiff completed approximately one year of course work in
the Teaching Program from the Summer of 2010 to the Spring of
2011.  During this time, four faculty members and one mentor
teacher expressed concerns over Plaintiff's suitability to teach.

In the Summer of 2010, Professor Frank Walton instructed
Plaintiff in courses ITE 401, "Introduction to Teaching," and ITE
404, "Teaching in the Subject Field."  (Defendants' CSF at Ex.
3.)  Professor Walton expressed concerns to Director Moniz
regarding Plaintiff's views on the roles, responsibilities, and
characteristics of a teacher.

In the Fall of 2010, Professor Katherine Ratliffe instructed
Plaintiff in course EDEP 631, "Adolescence and Education."  (Id.
at Ex. 4.)  Professor Ratliffe found Plaintiff's views on online
child predators and the age of consent concerning.  While
Ratliffe acknowledged Plaintiff's right to differing opinions,
she told Director Moniz she was "concerned that [Plaintiff] may
not be aware of and in agreement with safety issues about the
adolescents who will be in his care."  (Id.)  Additionally,
Ratliffe stated  "I think that, because of his lack of

sensitivity to and empathy with others and lack of self-awareness at this time, we should be very careful about accepting Plaintiff as a teacher candidate." (Id.)  Professor Ratliffe spoke with Oyama regarding her concerns about his statements and views on child predators during the semester. (Id.)

During the same Fall semester of 2010, Plaintiff completed a field experience practicum under the guidance of a mentor teacher at a local public school.  After observing Plaintiff in a classroom setting, Plaintiff's Mentor Teacher Charles Souza evaluated Plaintiff's field experience performance. (Id. at Ex. 5.)  Although Souza gave Plaintiff an "Acceptable" assessment in four out of five professional disposition criteria, Souza found Plaintiff's Self-Reflection and Professional Development "Unacceptable." Souza additionally commented that "[m]y overall impression is that Mark would not do well as a middle school teacher.  I don't believe his heart is into it." (Id.)

Plaintiff's University Coordinator for his field experience, Dr. Irv King, also completed a evaluation form that rated fifteen observed teaching qualities.  Dr. King gave Plaintiff "unacceptable" ratings in the following seven observed teaching qualities: (1) professional in appearance and manner; (2) enthusiastic about teaching and students; (3) accepts feedback and suggestions; (4) uses sound judgment; (5) works collaboratively with others; (6) teaching effectiveness; and (7)

6

self reflection. (Id.) Dr. King found that Plaintiff was only "on target" with regard to his subject matter competency.

In the Summer of 2011, Professor Jason Siegel instructed Plaintiff in course SPED 445, "Educating Exceptional Students in Regular Classrooms - Secondary." (Id. at Ex. 6.) Professor Siegel expressed "serious concerns regarding Mark Oyama entering the teaching profession" to Director Moniz. (Id.) Throughout the Summer Term, Professor Siegel and Plaintiff engaged in a dialogue where Siegel told Plaintiff about his concerns over Plaintiff's unrealistic approach to teaching students with disabilities. (Id. at Ex. 6 at H01374.)

The Teaching Program requires students to complete one semester of student teaching. Students must submit an application form in order to student teach. (Defendants' CSF at Ex. 2 at 16.) During the Spring 2011 semester, Plaintiff submitted an application form for student teaching.

On July 8, 2011, Plaintiff met with Director Moniz, Dr. Irv King, and a representative from the Office of Student Academic services. (Id. at Ex. 11.) At the meeting, Plaintiff was informed that his student teaching application was denied. The panel reviewed the field experience evaluations by Mentor Teacher Souza and Dr. King with Plaintiff. This was the first time Plaintiff was provided with his field experience evaluations.

In a letter dated July 8, 2011, Defendant Moniz provided

7

Plaintiff with written confirmation of the denial of his student teaching application.  (Plaintiff's CSF at Ex. 9; Defendants' CSF at Ex. 7.)  Moniz specifically cited statements reported by the concerned faculty members and Oyama's field experience evaluations as evidence that the College of Education did not think Oyama met the Hawaii and National teaching standards.

On July 18, 2011, Plaintiff submitted a letter to Director Moniz and the Academic Grievance Committee appealing the decision to deny him a student teaching position, or in the alternative requested a tuition refund for all previous course work completed at the College of Education.  (Defendants' CSF at Ex. 8.)

In a letter dated July 29, 2011, Director Moniz stated that upon further consideration and consultation with faculty, the College of Education affirmed the decision to deny Plaintiff a student teaching position.  (Defendants' CSF at Ex. 9.)  Moniz denied Plaintiff's alternative request for a tuition refund and directed him to the Academic Grievance Committee if he wished to file an appeal.

On August 16, 2011, Plaintiff submitted an e-mail to the Vice Chancellor of Academic Affairs requesting review of his academic grievance complaint.  (Defendants' CSF at Ex. 10.)  The Department of Academic Affairs referred Plaintiff's appeal to the Dean of the College of Education, Dean Sorensen, based on the College of Education's familiarity with their own program and

standards.  (Id.)  To assist the Dean in her decision, a Grievance Committee was formed to investigate Plaintiff's grievance.  (Id. at Ex. 11.)

On September 16, 2011, the Grievance Committee interviewed Oyama.  The Committee also interviewed additional College of Education faculty at Oyama's request.  The Grievance Committee provided Defendant Sorensen with a report and findings on November 17, 2011.  (Id.)  The Grievance Committee report found that Plaintiff was not suitable to student teach since Plaintiff's disposition as well as comments and statements he made during classes and during the Grievance Committee interview were "serious matters of concern."  (Id.)

In a letter dated December 15, 2011, Dean Sorensen affirmed the decision to deny Plaintiff a student teaching position. (Defendants' CSF at Ex. 12.)

Plaintiff challenges Defendants' decision to deny his application for a student teaching placement.  Plaintiff claims his freedom of speech rights were violated under the First Amendment of the United States Constitution and Article I § 4 of the Hawaii State Constitution.  Plaintiff alleges a violation of his right to due process under the Fourteenth Amendment of the United States Constitution and Article I § 5 of the Hawaii State Constitution.  Plaintiff also alleges a Third Cause of Action against Defendants for "acting knowingly, intentionally, and

deliberately." Plaintiff requests damages, injunctive relief, and attorney's fees.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving

party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630.  The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  When the non-moving party relies only on its own

11

affidavits to oppose summary judgment, it cannot rely on
conclusory allegations unsupported by factual data to create an
issue of material fact.  Hansen v. United States, 7 F.3d 137, 138
(9th Cir. 1993); see also National Steel Corp. v. Golden Eagle
Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

**ANALYSIS**

**I.  The Eleventh Amendment Bars All Claims Against the
University of Hawaii and the Claims for Monetary Relief
Against Defendants Sorensen and Moniz In Their Official
Capacities**

The doctrine of sovereign immunity is set out in the
Eleventh Amendment of the United States Constitution:

> The Judicial power of the United States shall not be
> construed to extend to any suit in law or equity,
> commenced or prosecuted against one of the United States
> by Citizens of another State, or by Citizens or Subjects
> of any Foreign State.

U.S. Const. amend. XI.  The United States Supreme Court has held
that Eleventh Amendment immunity extends to suits against a State
or its agencies by citizens of that same State.  Hans v.
Louisiana, 134 U.S. 1 (1890).  Sovereign immunity generally bars
the federal courts from entertaining suits brought against a
state or its agencies absent a State's consent or Congressional
abrogation.  Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697,
704 (9th Cir. 1992).  Absent a waiver or abrogation of immunity,
federal statutory and constitutional claims for money damages are
barred against state officials sued in their official capacities.

12

See Dittman v. State of California, 191 F.3d 1020, 1025-26 (9th Cir. 1999).


**A.    Defendants Have Not Waived Sovereign Immunity**

A State's consent to waive sovereign immunity must be expressed unequivocally.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984).  The State of Hawaii has not waived its sovereign immunity from suit in federal court for civil rights actions.   The University of Hawaii is an agency of the State and entitled to Eleventh Amendment immunity.  Mukaida v. Hawaii, 159 F.Supp.2d 1211, 1221 (D. Haw. 2001) aff'd, 85 F. App'x 631 (9th Cir. 2004).   As employees of the university, Defendants Sorensen and Moniz, in their official capacities, are also entitled to sovereign immunity.  Id. at 1227.

**B.    42 U.S.C. § 1983 Does Not Abrogate Sovereign Immunity**

Congress has the power to abrogate the sovereign immunity of the States, pursuant to Section 5 of Amendment XIV of the United States Constitution: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." Congress must do so by enacting a statute which "explicitly and by clear language indicate[s] on its face an intent to sweep away the immunity of the States." Quern v. Jordon, 440 U.S. 332, 332 (1979); Kimel v. Florida Board of Regents, 528 U.S. 62, 73 (2000)(Congress may abrogate the States' constitutionally secured

13

immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute).

As stated by the United States Supreme Court in Will v. Michigan Dep't of State Police, Congress did not abrogate the States' Eleventh Amendment immunity when enacting 42 U.S.C. § 1983:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. . . .

Will v. Michigan Dep't of State Police, 491 U.S. 58, at 65-66 (1989).

Agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court.  In re Pegasus Gold Corp., 394 F.3d 1189, 1195 (9th Cir. 2005).  A state agency or an official acting in her official capacity, except where sued for prospective injunctive relief, is not a "person" for purposes of liability under § 1983.  Id.; Sherez v. State of Hawaii Department of Education, 396 F.Supp.2d 1138, 1142-43 (D. Haw. 2005) (dismissing claims against the Department of Education and against state official in official capacity on Eleventh Amendment Immunity grounds).

Defendants have not waived sovereign immunity, and Congress, in passing 42 U.S.C. § 1983, did not abrogate the Eleventh Amendment immunity of state governments.  The Court lacks

14

jurisdiction over all of Plaintiff's federal constitutional claims against Defendant University of Hawaii.  Plaintiff's claims against the University of Hawaii are **DISMISSED.**

Plaintiff concedes that claims for monetary damages against the University and its employees in their official capacity are barred.  (Plaintiff's Opposition to Defendants Sorensen and Moniz's Motion for Summary Judgment at 5, ECF No. 30.)  Plaintiff's claims for monetary damages against Defendants Sorensen and Moniz in their official capacities are **DISMISSED.**

## C.   Plaintiff's Claims For Prospective Relief

Under the doctrine established in Ex parte Young, 209 U.S. 123 (1908), the Eleventh Amendment does not bar a suit "for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law." Wilbur, 423 F.3d at 1111 (quoting Aqua Caliente Band of Cahuilla Indians v. Hardin, 223 F.3d 1041, 1045 (9th Cir. 2000)).  This is because "official-capacity actions for prospective relief are not treated as actions against the State." Will, 491 U.S. at 71 n.10.  The Ex parte Young doctrine does not apply when a plaintiff alleges an ongoing violation of state law. Pennhurst, 465 U.S. at 106.  The doctrine is also inapplicable when a claim is asserted against a state agency as it only applies to claims against an individual state official. McNally v. Univ. of Hawaii, 780 F. Supp. 2d

15

1037, 1056 (D. Haw. 2011) <u>reconsideration denied</u>, CIV. 09-00363
SOM KSC, 2011 WL 607114 (D. Haw. Feb. 10, 2011).

To determine if Plaintiff may maintain his § 1983 claims for
prospective injunctive relief against Defendants Sorensen and
Moniz in their official capacities under the doctrine of <u>Ex parte
Young</u>, the court must "conduct a straightforward inquiry into
whether [the] complaint alleges an ongoing violation of federal
law and seeks relief properly characterized as prospective."
<u>Verizon Md., Inc. v. Public Serv. Comm'n of Md., et al.</u>, 535 U.S.
635, 645 (2002); <u>ACS of Fairbanks, Inc. v. GCI Communication
Corp.</u>, 321 F.3d 1215, 1216-17 (9th Cir. 2003).  A request for
reinstatement is a claim for prospective relief due to ongoing
violations of federal law against state officials.  <u>Doe v.
Lawrence Livermore Nat. Lab.</u>, 131 F.3d 836, 841-42 (9th Cir.
1997).

Plaintiff has asserted that the denial of his student
teacher application was unlawful and seeks injunctive relief.
Specifically, he requests an injunction preventing Defendants
from restricting "his rights to free speech and association, due
process, and participation in academic affairs."  (Compl. at 8.)
Although the Eleventh Amendment does not bar Plaintiff's § 1983
claims for prospective relief under <u>Ex parte Young</u>, as discussed
below, Defendants Sorensen and Moniz are entitled to summary
judgment on these claims because Oyama has failed to demonstrate

16

that the Defendants violated his constitutional rights under the
First or Fourteenth Amendments of the United States Constitution.

## II.  The Claim's Against Defendants Sorensen and Moniz In Their Individual Capacities Are Barred By Qualified Immunity

The doctrine of qualified immunity shields public officials
performing discretionary functions from personal liability if
their conduct did not (1) violate a statutory or constitutional
right, (2) that was clearly established at the time of the
challenged conduct.  Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080,
179 L. Ed. 2d 1149 (2011) (citing Harlow v. Fitzgerald, 457 U.S.
800, 818 (1982)).  To be clearly established, a constitutional
right must be sufficiently clear "that every reasonable official
would have understood that what he is doing violates that right."
al-Kidd, 131 S. Ct. At 2083.  A district court may exercise its
discretion to decide which of the two-prongs of qualified
immunity analysis to determine first.  Id.

"Qualified immunity balances two important interests — the
need to hold public officials accountable when they exercise
power irresponsibly and the need to shield officials from
harassment, distraction, and liability when they perform their
duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231
(2009).  In the educational context, a public official's
discretionary functions include demoting, evaluating, and
disciplining students.  Cohen v. San Bernardino Valley Coll., 92

F.3d 968, 973 (9th Cir. 1996).

As discussed below, Defendants did not violate Plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution.  Defendants Sorensen and Moniz are entitled to qualified immunity.

Defendants appear to argue that all of the allegations against Sorensen and Moniz were limited to actions taken in their official capacities and therefore Plaintiff's claims are barred by Hawaii Revised Statute § 304A-108.  Section 304A-108 provides that "all claims arising out of the acts or omissions of the university or the members of its board of regents, its officers, or its employees, including claims permitted against the State under chapter 661, and claims for torts permitted against the State under chapter 662, may be brought only pursuant to this section and only against the university."  Haw. Rev. Stat. § 304A-108.  Because the Court finds that Defendants Sorensen and Moniz did not violate Plaintiff's constitutional rights, an analysis of Haw. Rev. Stat. § 304A-108 is not necessary.

A.    Procedural Due Process

At a minimum, the due process clause requires that a deprivation of life, liberty or property by adjudication be preceded by notice and opportunity to be heard, appropriate to the nature of the case.  Armstrong v. Manzo, 380 U.S. 545, 550, 85 S. Ct. 1187, 1190, 14 L. Ed. 2d 62 (1965).  In the context of

18

academic evaluations of a student, the Supreme Court has held

that a formal hearing by a university is not required.  Bd. of

Curators of the Univ. of Missouri v. Horowitz, 435 U.S. 78, 90

(1978).  In Horowitz, a former medical student challenged her

dismissal from medical school.  The court held that the

university afforded the plaintiff sufficient procedural due

process in informing respondent of the faculty's dissatisfaction

with her progress and that the ultimate decision to dismiss

plaintiff was careful and deliberate.  Id. at 85.  The court

explained a formal hearing was not necessary because:

> The decision to dismiss respondent . . . rested on the
> academic judgment of school officials that she did not
> have the necessary clinical ability to perform adequately
> as a medical doctor and was making insufficient progress
> toward that goal. Such a judgment is by its nature more
> subjective and evaluative than the typical factual
> questions presented in the average disciplinary decision.
> Like the decision of an individual professor as to the
> proper grade for a student in his course, the
> determination whether to dismiss a student for academic
> reasons requires an expert evaluation of cumulative
> information and is not readily adapted to the procedural
> tools of judicial or administrative decision making.
> Under such circumstances, we decline to ignore the
> historic judgment of educators and thereby formalize the
> academic dismissal process by requiring a hearing.

Horowitz, 435 U.S. at 89-90.  The court also held that it was not

necessary to determine whether the university deprived plaintiff

of a constitutionally protected interest because even assuming

the existence of an interest, plaintiff was afforded at least as

much due process as the Fourteenth Amendment required.  Id. at

84-85.

In the case before the Court, Oyama alleges a procedural due process violation based on the lack of procedural protections over Defendants' actions. (Compl. at ¶ 32.) Oyama appears to assert an interest in his continued enrollment in the Teaching Program and his right to the University's student teaching application review process. (Id. at ¶¶ 27, 32.) Oyama argues that Defendants did not provide sufficient and timely information on the standards he was expected to meet, the procedures used to evaluate students, and the concerns voiced by faculty in the Fall of 2010. (Plaintiff's CSF at Ex. 8.) The United States Supreme Court and the Ninth Circuit Court of Appeals have not determined if a plaintiff has a protected liberty or property interest in continuing his education. Brown v. Li, 308 F.3d 939, 955 (9th Cir. 2002) (citing Horowitz, 435 U.S. at 89-91). The Seventh Circuit Court of Appeals has held that a student's interest in a university's review process is not protected by the federal Constitution. Sung Park v. Ind. Univ. Sch. Of Dentistry, 692 F.3d 828, 832 (7th Cir. 2012) (citing Olim v. Wakinekona, 461 U.S. 238, 250 (1983) (a state may chose to require procedures but does not create an independent substantive right in doing so)).

Following the procedural due process analysis for academic decisions by universities set forth in Horowitz, and assuming arguendo that Oyama had a constitutionally protected right, the University afforded him adequate procedural due process. The

20

University provided Plaintiff with a Teaching Program Handbook. (Defendants' CSF at ¶ 7; Plaintiffs' Counter-Statement at ¶ 7.) The Handbook clearly states that the Teaching Program is designed to prepare effective and professional classroom teachers consistent with State and National teaching standards. (Defendants' CSF at Ex. 2 at Introduction.)  The Handbook includes copies of the Secondary Teacher Program Standards and Hawaii Teacher Performance Standards.  (Id. at Ex. 2 at 31-37.) The Teaching Program Standards emphasize that the teacher candidate must understand adolescent culture and how adolescents learn and develop in order to actively engage students.  (Id. at Ex. 2 at 32.)  Teacher candidates are expected to use an understanding of individual and group motivation and behavior to create a safe, healthy learning environment.  (Id.)  Applicants to the Teaching Program are also clearly notified that admission to the College does not automatically guarantee admission to student teaching.  (Id. at Ex. 1 at 5; Ex. 2 at 16.)

On July 8, 2011, Defendant Moniz, Dr. Irv King, and a representative from the Office of Student Academic services met with Oyama and informed him that his student teaching application was denied based on faculty concerns over his suitability for teaching.  (Id. at Ex. 11.)  Although the meeting was the first time Oyama reviewed the field experience evaluations, a semester after the evaluations were completed, Plaintiff was given the

opportunity to discuss the evaluations with field experience coordinator Dr. King at the July 8, 2011 meeting.  Plaintiff was also provided with a letter specifying the faculty members' concerns and why the College of Education felt Plaintiff did not meet standards set by the Hawaii Department of Education, the National Council for the Accreditation of Teachers, and the Hawaii Teacher Standards Board.  (Id. at Ex. 7.)

Plaintiff argues that he was not provided with any prior notice of the concerns regarding his suitability to teach or the standards used to evaluate him in denying the student teaching placement.  The Teaching Program Handbook clearly sets forth the standards for Teaching Program candidates.  These standards include "the candidate creates a safe, healthy learning environment" and "the teacher candidate acknowledge the diversity of students and schools (e.g., ethnic, cultural, language, religion, disabilities)." (Id. at Ex. 2 at H00119.)  Plaintiff admits he received the handbook.  (Plaintiffs' Counter-Statement at ¶ 7.)   Plaintiff cannot claim he was unaware of these standards.

Plaintiff's claim that he had no notice of his teaching deficiencies in the semesters leading up to the July 8, 2011 decision to deny him a student teaching placement is disingenuous.  Plaintiff does not contest that two professors personally shared their concerns with him.  Professor Ratliffe

22

and Professor Siegel's discussions with Plaintiff while he was taking their courses reflected their serious concerns with Plaintiff's suitability to teach, specifically his ability to effectively teach adolescents and students with disabilities.

After Oyama was formally notified that his student teaching application was denied on July 8, 2011, the university afforded him an appeals procedure.  Defendant Moniz reviewed Oyama's July 18, 2011 objection letter and again considered Oyama's application, consulted faculty, and decided to affirm the decision on July 29, 2011.  (Id. at Ex. 9.)  Moniz also directed Oyama to file an appeal with the chairperson of the Academic Grievance Committee.

A Grievance Committee comprised of three university faculty members was formed in the Fall of 2011 to review and investigate Oyama's case.[1]  On September 16, 2011, the Grievance Committee interviewed Oyama.  They also interviewed College of Education faculty at Oyama's request.  (Defendants' CSF at Ex. 11.)  On November 17, 2011, the Grievance Committee issued a six-page report and findings.

The report reviewed the history and comments of the faculty, mentor teacher, and the Plaintiff.  The interactions of Plaintiff

---

[1]   The Grievance Committee included the Chair of the Educational Foundations Department, the Chair of the Kinesiology and Rehabilitation Sciences Department, and an Interim Associate Dean of the College of Education.

with those evaluating him as well as Plaintiff's interactions
with other students were considered.

The Grievance Committee recognized that Plaintiff should
have been given written notice of the standards students were
expected to meet as well as the procedures for evaluation and
degree requirements sooner.  In particular, the field experience
evaluations were not presented to him in a timely manner.
Nonetheless, the Committee found Plaintiff unsuitable to student
teach.  The Grievance Committee found Oyama's disposition as well
as comments and statements he made during classes and during the
Grievance Committee interview were serious matters of concern.
(Id.) The result reflects the reality that Plaintiff had numerous
encounters in class and outside of class with the faculty and the
mentor teacher when they outlined their concerns to Plaintiff.

Dean Sorensen reviewed the Grievance Committee report and
Oyama's file and denied his appeal on December 15, 2011.  The
University's denial of Oyama's student teaching application was
"careful and deliberate" and included reviews at multiple levels,
including Director Moniz, the Grievance Committee, and finally
Dean Sorensen.  Horowitz, 435 U.S. at 85.  Defendants did not
violate Oyama's procedural due process rights under the
Fourteenth Amendment of the United States Constitution.

### B.    Substantive Due Process

The substantive component of the Due Process Clause protects

24

an individual's life, liberty, or property against certain
government actions, regardless of the fairness of the procedures
used to implement them.  Collins v. City of Harker Heights, Tex.,
503 U.S. 115, 125, 112 S. Ct. 1061, 1068, 117 L. Ed. 2d 261
(1992).  To establish a violation of substantive due process, a
plaintiff must prove that the government's action was clearly
arbitrary and unreasonable, having no substantial relation to the
public health, safety, morals or general welfare.  Kawaoka v.
City of Arroyo Grande, 17 F.3d 1227, 1234 (9th Cir. 1994).
Similar to its analysis of procedural due process in Horowitz,
the United States Supreme Court has declined to determine whether
there is a constitutionally protected interest in a student's
continued enrollment in a graduate degree program when analyzing
substantive due process claims based on academic decisions.
Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 223-223
(1985) (declining to determine whether there was a property
interest in continued enrollment).  Citing the Court's
established reluctance to formulate a rule of constitutional law
broader than is required by the precise facts to which it is to
be applied, the court in Ewing assumed the existence of a
constitutionally protectible interest in a student's continued
enrollment, and focused its substantive due process analysis on
whether the university engaged in arbitrary state action.  474
U.S. at 222-223 (citing Ashwander v. TVA, 297 U.S. 288 (1936) (J.

25

Brandeis, concurring)).

In Ewing, the court construed plaintiff's argument as a claim that the university misjudged his fitness to remain in a medical studies program.  474 U.S. at 225.  The court rejected plaintiff's argument because the record demonstrated that the faculty's decision was made with careful deliberation, based on an evaluation of the entirety of plaintiff's academic career. Id.  In finding there was no due process violation, the court emphasized judicial deference to the faculty's professional judgment and held that courts may not overturn academic decisions "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."  Id.

Oyama's Complaint does not specify a claim for violation of his substantive due process rights; however, to the extent that Plaintiff challenges Defendants' denial of his application for a student teaching position, Defendant's did not act arbitrarily. The evidence illustrates that Defendants exercised their professional judgment in denying the application.

Defendants based their decision to deny Plaintiff's student teaching application on the concerns of three College of Education professors and Plaintiff's field experience performance as evaluated by Mentor Teacher Souza and Dr. King.  The student teaching placement denial was not a substantial departure from

26

accepted academic norms.  It is clear the Defendants exercised professional judgment.  Ewing, 474 at 227.

### C.   First Amendment Right to Free Speech and Assembly

The academic freedom afforded to Universities raise special concerns under the First Amendment of the United States Constitution.  University of California Regents v. Bakke, 438 U.S. 265, 312 (1978) (opinion of Powell, J.).  The doctrine of academic freedom includes "not merely liberty from restraints on thought, expression, and association in the academy, but also the idea that universities and schools should have the freedom to make decisions about how and what to teach."  Bd. of Regents v. Southworth, 529 U.S. 217, 237 (Souter, J., concurring).  The United States Supreme Court has consistently exercised judicial deference to a University's academic dismissal decisions out of respect for the University's professional judgment. Ewing, 474 U.S. at 225 (1985); Horowitz, 435 U.S. at 80 (1978).

Curricular speech consists of speech that is an integral part of the classroom teaching function of an educational institution.  Brown v. Li, 308 F.3d 939, 950 (9th Cir. 2002).  In Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260 (1988), the United States Supreme Court held that a public secondary school may regulate the content of curricular student speech provided that the limitation is reasonably related to a legitimate

27

pedagogical purpose. _Id._ at 273.  The Supreme Court expressly
reserved the issue of whether that same deferential standard
would apply at the college and university level.  _Id._ at 273 n.7.
In a non-binding opinion, the Ninth Circuit Court of Appeals
applied the _Hazelwood_ analysis to a university's restrictions on
curricular student speech.  _See_ _Brown_, 308 F.3d at 947 (the
three judges on the panel each filed separate opinions and there
was no majority opinion with respect to any First Amendment
principles).  The Sixth, Seventh, Tenth, and Eleventh Circuit
Courts of Appeal have also applied _Hazelwood_ in the university
setting.  See _Ward v. Polite_, 667 F.3d 727, 734 (6th Cir. 2012);
_see also_ _Hosty v. Carter_, 412 F.3d 731, 734 (7th Cir. 2005) (en
banc); _see also_ _Axson-Flynn v. Johnson_, 356 F.3d 1277, 1289 (10th
Cir. 2004); _see also_ _Keeton v. Anderson-Wiley_, 664 F.3d 865,
874-76 (11th Cir. 2011).

    In _Brown_, plaintiff challenged a university's decision to
refuse to approve a graduate thesis paper that met academic and
professional standards, but contained an acknowledgments section
that did not conform to established academic and professional
standards.  308 F.3d 939.  Under _Hazelwood_, Judge Graber held
that "the First Amendment does not require an educator to change
the assignment to suit the student's opinion or to approve the
work of a student that, in his or her judgment, fails to meet a
legitimate academic standard."  _Id._ at 949.  The university's

decision to decline to approve the noncompliant thesis section was reasonably related to a legitimate pedagogical objective-teaching plaintiff the proper format for a scientific paper.  Id. at 952.  Judge Graber also recognized the faculty members had an affirmative First Amendment right not to approve Plaintiff's thesis.  Id. at 952.

Plaintiff claims that in denying his application for a student teaching position, the University retaliated against him for expressing his opinions.  Although Plaintiff attempts to frame the university's decision to deny his student teaching application as penalizing his free speech rights, the evidence establishes that Defendants' decision was an academic decision based on professional judgment.  Additionally, the denial of the student teacher application was reasonably related to a legitimate pedagogical purpose - meeting the Hawaii and National teacher standards.

As Dean Sorensen articulated in her denial of Plaintiff's appeal:

> It is the responsibility of the faculty and of the College to ascertain whether candidates have not only the knowledge to be able to teach a subject, but also the pedagogical skills and dispositions embodied in the standards to qualify them to teach.  We have a responsibility to ensure that candidates in the state-approved teacher education program meet all standards and to recommend an individual to the licensing agency only when we feel a candidate meets these expectations.  While an individual has a right to freedom of speech, he or she does not have the right to be recommended for a teaching license when the standards are not met.

(Plaintiffs' CSF at Ex. 12.)  In his July 8, 2011 letter, Defendant Moniz outlined a number of factors that led to the decision to deny Plaintiff's application, specifically "the views you have expressed regarding students with disabilities and the appropriateness of sexual relations with minors were deemed not in alignment with standards set by the Hawaii Department of Education, the National Council for the Accreditation of Teachers, and the Hawaii Teacher Standards Board."  Moniz's five-page letter listed some of the various concerns expressed as to Plaintiff's suitability to teach.  Included were the faculty concerns about his professional dispositions toward classroom teaching, perceived lack of awareness and insensitivity to the adolescents and special needs students that would be left under his care, and unwillingness to change his views.  The First Amendment does not require Defendants to accept Plaintiff in a student teaching program if in their judgment he did not meet State and National teaching standards.

Plaintiff has failed to show that a genuine issue of material fact remains as to whether Defendants Sorensen and Moniz violated his constitutional rights.  Defendants Sorensen and Moniz, in their individual capacities, are entitled to qualified immunity.  Plaintiff's Due Process and First Amendment claims against Defendants Sorensen and Moniz are **DISMISSED** with prejudice.

### III. Plaintiff's State Law Claims

Plaintiff claims the Defendants violated his rights under the Hawaii State Constitution.[2]   42 U.S.C. § 1983 is a vehicle for seeking redress for violations of federal law.  A claim for violation of state law is not cognizable under § 1983.  Cornejo v. County of San Diego, 504 F.3d 853, 855 n. 3 (9th Cir.2007) (citing Campbell v. Burt, 141 F.3d 927, 930 (9th Cir.1998) ("We note that a claim for violation of state law is not cognizable under § 1983.")); Spears v. Hawaii, CIV. 12-00218 SOM, 2012 WL 1965592, *3 (D. Haw. May 31, 2012) (dismissing § 1983 violations based on the Hawaii State Constitution); Alston v. Read, 678 F.Supp.2d 1061, 1074 (D. Haw. 2010), reversed on other grounds 663 F.3d 1094 (9th Cir. 2011); Galario v. Adewundmi, 07-00159 DAE-KSC, 2009 WL 1227874, at *11 (D. Haw. May 1, 2009). Plaintiff's § 1983 claims based on the Hawaii State Constitution fail as a matter of law.

The district courts may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  The Ninth Circuit Court of Appeals has held that under 28 U.S.C. § 1367(c)(3), it is appropriate for a

---

[2]   Specifically, Plaintiff claims the Defendants violated the following sections of Article I of the Hawaii State Constitution: Section 2 Rights of Individuals; Section 4 Freedom of Religion, Speech, Press, Assembly and Petition; Section 5 Due Process and Equal Protection; and Section 6 Right to Privacy.

district court to decline jurisdiction over supplemental state claims because a federal claim had proven to be unfounded. Bryant v. Adventist Health Sys./West, 289 F.3d 1162, 1169 (9th Cir. 2002)(summary judgment for defendants on federal claim); see also Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maint., Inc., 333 F.3d 923, 926 (9th Cir. 2003).  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  Plaintiff's state law claims are **DISMISSED** without prejudice.

## IV.  Plaintiff's Third Cause of Action

Plaintiff alleges a Third Cause of Action against Defendants for "acting knowingly, intentionally, and deliberately." (Compl. at ¶ 34.)  Defendants argue that the alleged Third Cause of Action is not an actionable claim under federal or state law. Plaintiff has provided no legal support to refute the Defendants' position.  Plaintiff's third cause of action is **DISMISSED**.

## CONCLUSION

For the foregoing reasons,

(1)  Defendant University of Hawaii's Motion for Summary Judgment (ECF No. 24) is **GRANTED**.

(2)  Defendants Christine Sorensen and Jeffery Moniz's Motion for Summary Judgment (ECF No. 26) is **GRANTED**.

(3)  Plaintiff's Motion for Partial Summary Judgment (ECF No. 22) is **DENIED**.

The case is now closed.

IT IS SO ORDERED.

DATED: April 23, 2013, Honolulu, Hawaii.



/S/ Helen Gillmor

Helen Gillmor
United States District Judge

Mark L. Oyama v. University of Hawaii; Christine Sorensen; Jeffery Moniz; John Does 1-25; Jane Does 1-25; Civil No. 12-00137 HG-BMK; **ORDER GRANTING DEFENDANT UNIVERSITY OF HAWAII'S MOTION FOR SUMMARY JUDGMENT (ECF No. 24) AND GRANTING DEFENDANTS CHRISTINE SORENSEN AND JEFFERY MONIZ'S MOTION FOR SUMMARY JUDGMENT (ECF No. 26) AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 22)**